AUG 6 2025 PM3:09
FILED - USDC - NDTX - AM

**Plaintiff**: Daniel Ndizeye
**Address**: 711 51st St, San Diego, CA 92114-1001, USA
**Phone NO**: (619) 394-2453
**Email**: danielndizeye100@gmail.com

# 2 - 25 CV - 1 76 - Z

## UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF TEXAS, AMARILLO DIVISION

| | |
|---|---|
| DANIEL NDIZEYE<br><br>**Plaintiff**.<br><br>v. | CITY OF SAN DIEGO, VLAD GREM, (DOES 1-10, inclusive), (In Their Official Capacity),<br><br>JUDGE CAROLYN CAIETTI, VLAD GREM, (In Their Official Capacity),<br><br>GAVIN CHRISTOPHER NEWSOM,<br><br>MOLLY C. DWYER, (In Her Official Capacity),<br><br>JUDGES, CLERKS, & INDIVIDUALS DOES 1-20, (In Their Official Capacity),<br><br>**Defendants.** |

| | |
|---|---|
| **COMPLAINT FOR VIOLATIONS OF RACKETEERING (RICO) AND CIVIL RIGHTS**<br><br>DEMAND FOR JURY TRIAL<br><br>Case No.: [To be assigned] | **(1) UNDER**: 18 U.S.C. § 1961 et seq. (Racketeer Influenced and Corrupt Organizations Act - RICO)<br><br>**(2) VIOLATION**: 42 U.S.C. § 1983 (Deprivation of Rights Under Color of Law)<br><br>**(3) VIOLATION**: 18 U.S.C. § 1503 (Obstruction of Justice)<br><br>**(4)** First, Fifth, and Fourteenth Amendments to the U.S. Constitution |

### Notice of Submission of Clerk's Record as Exhibits

Plaintiff hereby notifies the Court that the Clerk's Record will be referenced as exhibits in support of Plaintiff's claims and arguments. These records will be submitted in conjunction with Plaintiff's Request for Judicial Notice, pursuant to *Fed. R. Evid 201*. The exhibits contain official court documents that are not subject to reasonable dispute and are capable of accurate and ready determination from reliable sources, thereby qualifying for judicial notice. Accordingly, Plaintiff respectfully requests that the Court take judicial notice of the Clerk's Record and consider the attached exhibits as part of the record in this matter.

COMPLAINT FOR VIOLATIONS OF RACKETEERING (RICO) AND CIVIL RIGHTS - 1-18

1

2                                    I.    **INTRODUCTION**

3          Plaintiff, Daniel Ndizeye, brings this civil action under *18 U.S.C. § 1961* et seq. (Racketeer Influenced and

4    Corrupt Organizations Act "RICO") and *42 U.S.C. § 1983* (Civil Rights Violations), alleging that Defendants

5    conspired to obstruct his constitutional right to access the courts through procedural manipulation, fraud, and

6    coordinated misconduct. As they are associated individuals acting together to obstruct the judicial process for the

7    benefit of a municipal entity. Under ("RICO") *18 U.S.C. § 1962(c),* it is unlawful for any person employed by or

8    associated with an enterprise affecting interstate or foreign commerce "to conduct or participate, directly or

9    indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

10         Racketeering activity includes acts intended to obstruct justice, and a "pattern" requires the commission of

11   at least two such predicate acts. (*See 18 U.S.C. § 1961(1)* & (5); *H.J. Inc. v. Northwestern Bell Telephone Co.* 492

12   U.S. 229, 237–238 (1989) [*"It is this factor of continuity plus relationship which combines to produce a pattern."*].)

13         Courts have ruled that federal judicial misconduct and municipal corruption can meet this requirement. (*See*

14   *United States v. Bagnariol,* 665 F.2d 877, 881–85 & 892 (9th Cir. 1981)); ([*"The government must show a nexus...*

15   *albeit minimal."*)] Such conspiratorial conduct meets the threshold for a RICO "enterprise" acting through a "pattern

16   of racketeering activity," particularly where coordinated efforts effectively obstruct justice in furtherance of the

17   enterprise's objective. (*See Sedima, S.P.R.L. v. Imrex Co.* 473 U.S. 479, 496 (1985); (*"If the defendant engages in a*

18   *pattern of racketeering activity in a manner forbidden by* [the statute]*, and the racketeering activities injure the*

19   *plaintiff in his business or property, the plaintiff has a claim under* [RICO].*"* (majority opinion).)

20         This action arises from Defendants' **deliberate suppression of Plaintiff's legal filings**, the wrongful

21   dismissal of cases without judicial review, and the **collusion between city officials, court clerks, and federal**

22   **judges** to obstruct due process, violating **Plaintiff's First, Fifth, and Fourteenth Amendment rights.**

23                                  II.    **JURISDICTION AND VENUE**

24         **The RICO Act** is built on the recognition that **jurisdiction is a privilege, not a license to obstruction.**

25   (*Art. IV, § 1*), *28 U.S.C. § 1404(a)*. This court has subject matter jurisdiction over this action pursuant to *28 U.S.C. §*

26   *1331* (federal question jurisdiction), *18 U.S.C. § 1964* (**RICO jurisdiction**), and *28 U.S.C. § 1343(a)(3)* (civil rights

27   violations).

28

                 COMPLAINT FOR VIOLATIONS OF RACKETEERING (RICO) AND CIVIL RIGHTS - 2-18

1    Venue is proper in the Northern District of Texas, Amarillo Division, pursuant to *28 U.S.C. §*

2    *1391(b)(2)* and *(b)(3)* because a substantial part of the acts and omissions giving rise to the claims, including judicial

3    obstruction, retaliatory denials of rights, and acts furthering a pattern of racketeering, occurred across multiple

4    federal districts spanning multiple states. **Some of the defendants reside in and conduct official business within**

5    **this District.**

6    As the harm involves the use of federal authority to suppress protected civil rights and obstruct justice in

7    multiple states, and because defendants are subject to personal jurisdiction under *18 U.S.C. § 1965(b)*, this Court

8    may assert jurisdiction over other parties in the interest of justice in a civil RICO action, especially where the

9    alleged enterprise operated across state lines and within the judicial system itself.

10    The named misconduct involves City of San Diego officials, judges, clerks, and officials from the **U.S.**

11    **District Courts in California and the 9th Circuit Court of Appeals,** who are directly implicated in the claims

12    brought herein. Transferring this action to **California would present a clear conflict of interest**, as it would require

13    **those very same courts — or their peers — to adjudicate allegations of their own misconduct**, in violation of

14    the Due Process Clause of the **14th Amendment** and *28 U.S.C. § 455(a).*

15    Under *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868, 876 (2009), **judicial recusal is constitutionally**

16    **required where there exists an unconstitutional risk of actual bias.** Therefore, to ensure a fair, **impartial, and**

17    **constitutionally sound proceeding, venue** is proper and necessary **in the Northern District of Texas, Amarillo**

18    **Division.**

19    ### III.    PARTIES

20    **Plaintiff, Daniel Ndizeye,** is a U.S. citizen and pro se litigant who has been unlawfully prevented from

21    obtaining judicial review in multiple federal courts.

22    **Defendant, Honorable Carolyn Caietti (Vlad Grem),** is a judge of the Superior Court of California,

23    County of San Diego, sued in her official capacity. Plaintiff alleges that she violated his right to due process by

24    improperly ruling on her own disqualification motion in clear contravention of *CCP § 170.4(d).*

25    **Defendant, Gavin Christopher Newsom,** is named in his individual capacity as a key participant in a

26    racketeering enterprise that coordinated and enabled the misuse of federally allocated funds. Acting as the hallmark

27

28

COMPLAINT FOR VIOLATIONS OF RACKETEERING (RICO) AND CIVIL RIGHTS - 3-18

1  of the enterprise, he knowingly oversaw and benefited from a pattern of unlawful conduct carried out by agents

2  under his influence and control.

3        **Defendant, City of San Diego (Vlad Grem), Does 1-10,** is a municipal corporation responsible for the

4  obstruction of Plaintiff's civil rights litigation. The City of San Diego is responsible for maintaining and managing

5  public roads, under *Cal Public Resources Code § 26650, Cal. Gov. Code §§ 835* and *835.2.* As a recipient of federal

6  funds, the City must comply with the ADA, Title VI, *§ 504 of the Rehabilitation Act*, and FHWA guidelines. This

7  road has been responsible for **29 deaths due to its unsafe conditions.**

8        **Defendant, Molly C. Dwyer,** is the Clerk of the United States Court of Appeals for the Ninth Circuit and

9  is responsible for properly filing and processing petitions, appeals, and motions in accordance with federal law and

10  the rules of the court. She is sued in her **official capacity.**

11        **Judges, Clerks, & Individuals Does 1-20** are unidentified federal judges and court clerks who participated

12  in procedural manipulation against Plaintiff.

13                          **IV.    FACTUAL ALLEGATIONS**

14  **FIRST ACT: City of San Diego and Judicial Misconduct for RICO Violation**

15        Plaintiff, Daniel Ndizeye, filed a complaint (Refer CT. *000114-000133,* on Aug 14, 2023) alleging

16  negligence (Refer CT, *000129-000130, P. 16-17, line 1-18*) and discrimination (see *Ex. 1D, Img 1D-7D*, receives

17  annually maintenance. In Viol. of *23 CFR § 655.603*, which mandates resurfacing every 10 to 15 years; without a

18  valid reason constitutes a violation of Title VI of the Civil Rights Act of 1964: Under *42 U.S.C. § 2000d )* by the

19  City of San Diego regarding the maintenance (see *Ex. 1A, Img 24A*) and safety of the roadway (see *Ex. 1A, Img 1F-*

20  *5F;* road blocks emergency vehicles; **Plaintiff's vehicle was forced off the road due to the hazardous** (see *Ex. 1A,*

21  *Img. 16A-30A*) and poorly maintained roadway conditions, **causing the vehicle to veer into a ravine** (*Ex. 1A, Img*

22  *3A*).

23        As a result, **Plaintiff sustained multiple rib fractures, including one complete rib break** (*Ex. 1H, Img*

24  *19H*). When Plaintiff attempted to call for emergency assistance, *"Plaintiff was unable to receive emergency help,"*

25  see *Ex. 1F, Img 5F*), which disproportionately impacts Plaintiff. In violation, of Americans with Disabilities Act

26  (ADA) - Title II, Pursuant to *28 CFR § 35.151.* The **City of San Diego** failed to maintain its road infrastructure for

27

28

---

          COMPLAINT FOR VIOLATIONS OF RACKETEERING (RICO) AND CIVIL RIGHTS - 4-18

1   **62 years**, resulting in **29 fatalities due to its negligence**, in violation of *Cal. Gov. Code §§ 835* and *835.2*, (liability

2   for dangerous conditions.) (See *Ex 1A, Img 16A-30A*, and *Ex. 1F, Img1F-5F.*)

3          The inquiry has shifted from adherence to the rule of law and the welfare of the American public to a

4   determination of what outcome best advances the interests of the enterprise to which these actors are aligned. *See*

5   *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992); "limited series of coordinated actions taken for a

6   shared improper purpose may constitute a RICO enterprise — when used to control the outcome of litigation." *See*

7   *United States v. Lee*, 106 U.S. 196, 220 (1882) ([*"The people made the Constitution, and the people can enforce it.*

8   *No official—however powerful—can place themselves above its reach."*])

9          **Gavin Christopher Newsom** knowingly allowed a pattern of racketeering and fraudulent misuse of

10  federally allocated funds; including—but not limited to—the unlawful enrichment of himself and the enterprise

11  under his control. This conduct aligns with *United States v. Christensen*, 828 F.3d 763, 799–800 (9th Cir. 2015),

12  ([*"The enterprise in Christensen thrived not because every official acted overtly, but because those at the top*

13  *deliberately allowed the pattern to continue — a dynamic mirrored here through Defendant's intentional non-*

14  *action."*]) He **appointed the very agents who carried out these acts**, received regular oversight data that would

15  have revealed the pattern, and yet took **no corrective action** — all while those actions benefited his organization.

16  *See Reves v. Ernst & Young*, 507 U.S. 170 (1993). Formal control over the enterprise is not required. It is sufficient

17  that each Defendant knowingly participated in the conduct of the enterprise's affairs, whether directly or indirectly.

18  That is the hallmark of a RICO enterprise (see *18 U.S.C. § 1962(c)*).

19  **SECOND ACT: City of San Diego and Judicial Misconduct as a Rico Violation**

20         Plaintiff filed a motion for disqualification of Defendant Judge pursuant to California Code of Civil

21  Procedure ("CCP") *§§ 170.1(a)(6)(A)(iii)* and *170.4(d)*, asserting that Defendant Judge exhibited bias and could not

22  impartially preside over Plaintiff's case. However, rather than ensuring fair adjudication, the presiding judge acted

23  to shield the City of San Diego from accountability. *CCP § 170.4(d)* provides that a judge *"shall have no power to*

24  *act"* on the merits of a disqualification motion once it is filed, requiring such motions to be decided by a neutral

25  judge. Defendant Judge's actions constituted a procedural violation of *CCP § 170.4(d)* and a substantive violation of

26  Plaintiff's constitutional right to an impartial tribunal as guaranteed by the Due Process Clause of the (14th

27  Amendment). The procedural violation was not a mere oversight but a deliberate act to ensure that Defendant Judge

28

COMPLAINT FOR VIOLATIONS OF RACKETEERING (RICO) AND CIVIL RIGHTS - 5-18

1    remained on the case, thereby protecting the City of San Diego from judicial scrutiny. This clear conflict of interest

2    undermined the fairness of the proceedings and allowed government misconduct to continue unchecked.

3          **Record Forgery Exceeded Permissible Judicial Discretion**: Judge Caietti mischaracterized an "(FAC)

4    First Amended Complaint" as a "(SAC) **Second Amended Complaint**" to deny further amendments—contrary to

5    procedural rules—she operated outside any recognized discretion (see *Vess v. Ciba-Geigy Corp.* USA, 317 F.3d

6    1097, 1106 & 1108 (9th Cir. 2003) (observing that clarity in pleadings is essential to efficient case management).

7    (*See* CT, 000168). Despite only two complaints being on record: the original and the first amended. Under *CCP §*

8    *472(a)*, ([a plaintiff has the absolute right to file a FAC without leave of court, but any subsequent amendment—

9    including a SAC—requires the court's permission.])

10          By mislabeling the FAC as a second, Judge Caietti circumvented the statutory right to amend, thereby

11    unlawfully blocking Plaintiff from curing defects, if needed. This was not a clerical error but a procedural

12    manipulation that misrepresented the actual record to justify denying further amendment. *See Cf. Foman v. Davis,*

13    371 U.S. 178, 182 (1962). This act also constitutes a criminal violation under *California Penal Code § 134*, which

14    criminalizes the willful falsification of evidence submitted in legal proceedings. Federally, it violates *18 U.S.C. §*

15    *1519*, which prohibits knowingly altering or covering up a document with intent to impede or influence the

16    investigation or proper administration of justice.

17          Such conduct, done under color of law, deprived Plaintiff of his procedural due process rights protected by

18    the 14th Amendment. *See Cf. United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 739 (9th Cir. 1989) ([stating that

19    factual errors made in bad faith or due to partiality can give rise to serious due process concerns]); *Cf. DCD*

20    *Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).  As this act formed part of a broader scheme to

21    obstruct Plaintiff's access to justice and shield government actors from liability, it also serves as a predicate offense

22    under *18 U.S.C. § 1961(1)* for establishing a RICO enterprise.

23          **Hearing Date: January 26, 2023**

24          **Plaintiff (self-represented), addressing the bench:**

25          *"Your Honor, with all due respect, there is no justification for allowing the Defendant three months to*

26    *amend a demurrer. The Defendant is well-versed in the rules, and—frankly—this delay appears to be a calculated*

27

28

        COMPLAINT FOR VIOLATIONS OF RACKETEERING (RICO) AND CIVIL RIGHTS - 6-18

1  *tactic to derail my preparation. I have invested significant time studying the relevant statutes and case law to*

2  *properly present my arguments (CT, 000167, ¶ 2)."*

3      **Judge Carolyn Caietti** (*clearly impatient, leaning forward in her seat*):

4  (*Sighing loudly and rolling her eyes.*)

5      *"Listen to me, kid. I've got decades of judicial experience, and I've seen your type come and go. You don't*

6  *belong in this courtroom. You're not an attorney, and you certainly shouldn't be here playing lawyer."*

7      **Plaintiff:**

8      *"Your Honor, I assure you, I've done more than just read a few pages. I've diligently researched*

9  *procedural codes and precedent to ensure I'm following the proper rules."*

10     **Judge Carolyn Caietti** (*narrows her eyes, leaning back in her chair as though bored*):

11     *"Oh, spare me. You can quote some code sections and case citations—it doesn't make you a real lawyer.*

12 *And let's be honest: it's not just about being self-represented. You're from Nigeria or some other chaotic place,*

13 *aren't you?"*

14     **Plaintiff:**

15     *"I'm Congolese, Your Honor, not Nigerian. And again, I have the right to be here, to be heard, and to*

16 *ensure my case is handled fairly."*

17     **Judge Carolyn Caietti** (*waves off Plaintiff's response, her voice cold*):

18     *"Nigeria, Congo—it's all the same to me. All I see is ignorance. This is my courtroom, and I decide what*

19 *happens here. If I want to grant the Defendant three months or three years, that's my prerogative. You can't*

20 *possibly appreciate the complexities involved without a formal legal education."*

21     **Actions in the "Complete Absence of Jurisdiction":** As the Supreme Court has stressed, due process

22 entails (["an opportunity to present every available defense"]) or claim. *See Lindsey v. Normet*, 405 U.S. 56, 66

23 (1972). Under *Fed. R. Evid 201*—as well as California provisions (*Cal. Evid. Code §§ 452 & 453*)—the decision

24 whether to take notice of undisputed factual material hinges on whether the proffered items are the kind of facts or

25 records *"not subject to reasonable dispute."* If the evidence satisfies the criteria for judicial notice, the court has an

26 obligation to consider it on its own merits (see *United States v. Ritchie*, 342 F.3d 903, 908-909 (9th Cir. 2003). The

27 judge's professed confusion over *"which demurrer"* the request applied to is irrelevant to the legal basis for judicial

28

---

COMPLAINT FOR VIOLATIONS OF RACKETEERING (RICO) AND CIVIL RIGHTS - 7-18

1  notice. However, if any uncertainty arose, the proper course would have been to seek clarification—not to

2  summarily ignore the request. *Conley v. Gibson*, 355 U.S. 41, 48 (1957) (emphasizing courts' duty to resolve

3  procedural ambiguities in a way that promotes fairness and full presentation of relevant information).

4        **The Courts Mischaracterizing Judicial Notice as Tied to a Specific Demurrer:** *"Accordingly, it is*

5  *unclear whether Plaintiff's request for judicial notice at ROA 51 and filed the day before the instant demurrer was to*

6  *the previous demurrer or this demurrer.* (Refer FJ, MO, *CT. 000430, P. 1, ¶ 5) …"*

7        **Failure to Properly Address Judicial Notice Request:** The court blocked Plaintiff from presenting

8  evidence that was pivotal to understanding the factual or statutory framework of the case. As if that lie alone

9  justified rejecting the evidence. *Cf. Foman v. Davis*, 371 U.S. 178, 182 (1962) ([*"It is contrary to the spirit of the*

10  *Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of … mere technicalities."*])

11  By refusing such notice, the judge violated a procedural requirement—one that leaves no interpretive space for

12  balancing or textual analysis, thus constituting an administrative misstep rather than a judicial function. *See Lee v.*

13  *City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (court must consider whether documents are of a type

14  properly noticed, rather than fixating on procedural labels).

15        (Refer *RT, P. 9, l 5* on 04/05/2024: **MR. NDIZEYE** *formally objected to the action*: *"Okay. Well, I just*

16  *wanted ---"*, but the court prevented him from formally objecting (Refer RT, *P. 9, line 6*, especially in cases

17  involving ongoing harm and public safety (Of which the Plaintiff is a member).

18        **The Court's Threat of Arrest:** *"There's nothing further. I am moving on to another matter. MY DEPUTY*

19  *WILL ESCORT YOU OUT IF YOU DON'T GET UP* (Refer *RT. P. 9, line 6-8* on 04/05/2024)*."* When Plaintiff

20  attempted to address the denial of judicial notice and other procedural irregularities at the April 5, 2024, hearing, he

21  was met with threats of arrest rather than an impartial and orderly resolution of the procedural confusion. The

22  judge's remarks are not part of a reasoned ruling or any legal interpretation. Rather, they reflect an administrative

23  function carried out in a manner that intimidates and suppresses litigant participation. *Cf. Mayberry*, 400 U.S. at 466

24  (condemning judges' use of threats or hostility that impinge on a party's ability to present arguments).

25        The record reflects that Plaintiff attended all hearings, including those dismissed without proper

26  notification (*CT, 000326*) to Plaintiff. *See NAACP v. Button*, 371 U.S. 415, 429 (1963) ([*"… litigation is not a*

27  *technique of resolving private differences; it is a means for achieving the lawful objectives of equality of treatment*

28

---

COMPLAINT FOR VIOLATIONS OF RACKETEERING (RICO) AND CIVIL RIGHTS - 8-18

1  *by all government, federal, state and local, for the members of the Negro community in this country. It is thus a form*

2  *of political expression."*]) However, after the judge issued a threat against Plaintiff, he no longer appeared in court

3  in person (see *Porter v. Martinez,* 68 F.4th 429, 438 (9th Cir. 2023)). Plaintiff's decision to attend the May 2nd

4  hearing remotely (*CT, 000430*), rather than in person, was driven by fear of potential repercussions from the judge if

5  Plaintiff presented arguments the judge disfavored (*Dombrowski v. Pfister,* 380 U.S. 479, 487 (1965)). As a result,

6  Plaintiff's ability to effectively present his case was significantly impaired, as he refrained from fully asserting his

7  arguments to avoid further conflict with the judge. *See United States v. Conforte,* 624 F.2d 869, 881 (9th Cir. 1980).

8  **The Court's Failure to Provide Notice Rescheduled Hearing:** *"We're not hearing your case today, so*

9  *don't get too comfortable* (Refer *RT. P. 3, line 13-15* on 04/05/2024) ...."* The Defendant neither requested an

10  extension of time nor sought to reschedule the hearing. *Fed. R. Civ. P. Rule 6(c)(1)* mandates that a written motion

11  and notice of the hearing must be served at least **14 days** before the scheduled time. Instead, the judge unilaterally

12  assumed the Defendant's intentions, erroneously presuming that the Defendant did not wish to attend the hearing.

13  (*See CT, 000326* and *RT, P.1-10* on 04/05/2024). *"This is for the benefit of the City attorney* (Refer *RT. P. 3, line 16*

14  *on 04/05/2024)."* (In Viol. of *Cal. Civ. Proc. Code § 1005* requires that parties be **served with notice of motions**

15  **and hearings no less than 16 days** prior to the scheduled date.) Instead, the Honorable Judge rescheduled the

16  hearing spontaneously at the moment when Plaintiff had already taken their seat and was prepared to present their

17  case without providing constructive notice (see *Padilla v. ICE,* 953 F.3d 1134, 1142 (9th Cir. 2020).

18  **THIRD ACT: Federal Court Collusion to Protect State Judiciary**

19  Plaintiff sued Judge Carolyn Caietti in her official capacity, and filed a motion to proceed In Forma

20  Pauperis (IFP) due to financial inability to pay court fees (see *ECF No. 2.*). [In Viol, of 14th Amendment (Due

21  Process Clause), Violation of *Cal. Civ. Proc. Code §§ 170.1(a)(6)(A)(iii), 170.3(c)(5) and 170.4(d)*]. The federal

22  judge presiding over Plaintiff's case engaged in procedural misconduct designed to shield the state court judge and

23  the City of San Diego from scrutiny.

24  Plaintiff brings racketeering claims against Defendant under *18 U.S.C. § 1962(c)* for engaging in a

25  coordinated scheme to falsify judicial rulings, and deprive Plaintiff of constitutionally protected rights through

26  judicial fraud (see *ECF No. 12.*). For over a year, three judges [*ECF No. 3 & 4.*]—were successively assigned to

27  Plaintiff's case. Each judge refused to rule on Plaintiff's IFP application (*ECF No. 2.*). **The court denied Plaintiff's**

28

1  **IFP (see** *ECF No. 2 & 6.)* **application based on speculative reasoning—yet, in the same order** (*ECF No. 12*), **the**

2  **district court screened the complaint, dismissed it, and granted leave to amend—procedural actions that are**

3  **applicable only if the case had been accepted under (IFP) status.** (*ECF No. 12.*). Financial aid like student loans

4  or grants may not constitute "income" for IFP purposes (see *ECF No. 5.*) depending on whether it's earmarked for

5  tuition or housing, etc. *See Escobedo v. Apple American Group, LLC,* 787 F.3d 1226, 1234 (9th Cir. 2015).

6       The court violated *28 U.S.C. § 1915* by denying my motion to proceed IFP while simultaneously invoking

7  *§ 1915(e)(2)* to screen and dismiss the complaint. *See Lopez v. Smith,* 203 F.3d 1122 P. [6] (9th Cir. 2000),

8  screening under *§ 1915(e)* is only permitted where IFP has been granted. Because the court denied Plaintiff's IFP

9  status, it had no legal authority to dismiss the complaint or order an amendment under that statute (see *ECF No. 12*).

10  This contradiction unlawfully subjected Plaintiff's case to adverse treatment without jurisdiction and without access

11  to the court having been established; leading Plaintiff to petition the 9th Circuit (*ECF No. 10.*). The Ninth Circuit

12  stated that pro se litigants **are treated as having only three-fifths the value of attorneys.** The Court further stated

13  that pro se civil cases do not warrant the same priority as civil cases brought by attorneys (*ECF No. 11.*).

14       In retaliation the district court dismissed the complaint under *§ 1915(e),* even though that screening

15  provision only applies when IFP has been granted. *18 U.S. Code § 1519* (falsification of records) are implicated

16  where judges suppress motions, fabricate legal standards, or alter procedural outcomes to protect individuals

17  connected to the judiciary. All three judges appear to share close personal and family-like connections with Judge

18  Carolyn Caietti, beyond mere professional associations. The judges effectively engaged in a pattern of concealment

19  that constitute fraudulent conduct under *18 U.S.C. §§ 1341* and *1343* (mail and wire fraud), as well as a denial of

20  honest services under *18 U.S.C. § 1346.*

21       The district court improperly refused to rule on Plaintiff's Request for Judicial Notice (*ECF No. 1, RJN No.*

22  *8.*) by declaring it moot (see *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001) (The Ninth Circuit held

23  that when reviewing a motion to dismiss, courts may take judicial notice of matters outside the complaint if they are

24  **not subject to reasonable dispute**); the court effectively disregarded evidence that should have been considered,

25  mirroring the tactics used by the Superior Court judge. *See Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 999

26  (9th Cir. 2018), despite judicial notice being independent of the complaint and legally required under *Fed. R. Evid*

27  *201.*

28

COMPLAINT FOR VIOLATIONS OF RACKETEERING (RICO) AND CIVIL RIGHTS - 10-18

1       As the Supreme Court has stressed, due process entails *"an opportunity to present every available defense"*

2 or claim. *Lindsey v. Normet*, 405 U.S. 56, 66 (1972). *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th

3 Cir. 1988) (courts must accept verifiable facts appropriate for judicial notice). The 9th Circuit has held that failure to

4 rule on a properly presented issue constitutes legal error warranting mandamus relief. *In re Van Dusen*, 654 F.2d

5 1315, 1318 (9th Cir. 1981). The District Court had an obligation to ensure procedural fairness under *Haines v.*

6 *Kerner*, 404 U.S. 519, 520 (1972), which requires that pro se filings be liberally construed, yet the court failed to

7 apply this principle.

8 **FOURTH ACT: Federal Court Collusion to Protect State Judiciary**

9       Plaintiff filed a civil lawsuit, against the City of San Diego under *28 CFR § 35.151* of the Americans with

10 Disabilities Act (ADA) - Title II and related statutes. The District Court issued a final judgment (see *ECF No. 13.*).

11 The court also misstates the application of federal standards (such as MUTCD and ADA compliance), misapplies

12 pleading standards by demanding evidentiary support at the pleading stage.

13       The district court erred in dismissing the case without prejudice **when Plaintiff had explicitly declined to**

14 **amend the complaint** (see *ECF No. 11.*), effectively making the dismissal a final judgment (see *Edwards v. Marin*

15 *Park, Inc.,* 356 F.3d 1058, 1065 (9th Cir. 2004)) (A plaintiff's decision **not to amend after being given leave to do**

16 **so** renders the dismissal final and appealable.) Therefore, the district court's dismissal should have been labeled

17 **"with prejudice,"** making it a final adjudication of Plaintiff's claims. The court's decision to dismiss without

18 prejudice creates procedural ambiguity and unjustly denies Plaintiff his right to a direct appeal.

19       The dismissal effectively prevents Plaintiff from obtaining relief (see *ECF No. 13.*), warranting appellate

20 review (*WMX Techs., Inc. v. Miller,* 104 F.3d 1133, 1135-1136 (9th Cir. 1997)) (A dismissal without prejudice is

21 appealable if it effectively prevents the plaintiff from continuing the case.) This was a deliberate attempt to **block**

22 **Plaintiff from appealing,** as the court **knew it had no valid grounds to dismiss the case.** *See Padilla v.*

23 *Immigration and Customs Enforcement,* 953 F.3d 1134, 1142 (9th Cir. 2020): (*"... all persons in the United*

24 *States—regardless of their citizenship status, means or legality of entry, or length of stay—are entitled to the*

25 *protections of the Due Process Clause."*

26       The district court declared the RJN *"moot"* due to the dismissal of the complaint, despite the fact that

27 judicial notice is an independent evidentiary review process governed by *Fed. R. Evid 201.*

28

COMPLAINT FOR VIOLATIONS OF RACKETEERING (RICO) AND CIVIL RIGHTS - 11-18

1    **The Courts Mischaracterizing Judicial Notice**: *"... DISMISSES the Complaint ... The Court DENIES AS*

2    *MOOT... Request for Judicial Notice. (See ECF No. 10. P. 6, line 7-8) ..."*

3        The district court improperly refused to rule on Plaintiff's Request for Judicial Notice (RJN *ECF No. 9.*) by

4    declaring it moot (see *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (The Ninth Circuit held that

5    when reviewing a motion to dismiss, courts may take judicial notice of matters outside the complaint if they are **not**

6    **subject to reasonable dispute**); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018), despite

7    judicial notice being independent of the complaint and legally required under *Fed. R. Evid 201*. As the Supreme

8    Court has stressed, due process entails *"an opportunity to present every available defense"* or claim. *See Lindsey v.*

9    *Normet*, 405 U.S. 56, 66 (1972); *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (courts must

10   accept verifiable facts appropriate for judicial notice). The 9th Circuit has held that failure to rule on a properly

11   presented issue constitutes legal error warranting mandamus relief. *See In re Van Dusen*, 654 F.2d 1315, 1318 (9th

12   Cir. 1981).

13       Under *28 U.S.C. § 1915(e)(2)(B)(i)*, the judge may only dismiss if the complaint is: **Frivolous, Malicious,**

14   or **Fails to state a claim**. *"All of Plaintiff's claims fail to state a claim... The Court DISMISSES the Complaint*

15   *pursuant to 28 U.S.C. § 1915(a)."* That is a **statutory mistake** *§ 1915(a)* governs IFP applications only — **not**

16   **dismissals**. Dismissal for failure to state a claim under IFP screening is done under *§ 1915(e)(2)(B)(ii)*. **The judge**

17   **cited the wrong statutory authority**, either carelessness or unfamiliarity with the law — or intentional obfuscation

18   of the basis for dismissal.

19       **The Judge Has No Personal Knowledge of Plaintiff's Medical Records**: *"Ndizeye does not allege any*

20   *disability, nor does he allege discrimination due to disability. Thus, the Title II and Section 504 claims fail. (See*

21   *ECF No. 10.)"*

22       The court improperly concluded that Plaintiff is not disabled, despite having no evidence or legal authority

23   to make that determination (*ECF No. 10.*). Plaintiff did not deny having a disability (see Cplt *ECF No. 1.*), and

24   under *28 U.S.C. § 1915(e)(2)(B)(ii);* This provision authorizes screening of IFP cases — but only for legal

25   sufficiency, not for fact-finding. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). The judge's claim that

26   *"Plaintiff is not disabled"* is a factual determination, not a legal one. *See Denton v. Hernandez*, 504 U.S. 25, 33

27   (1992); ([*"An in forma pauperis complaint may not be dismissed, however, simply because the court finds the*

28

COMPLAINT FOR VIOLATIONS OF RACKETEERING (RICO) AND CIVIL RIGHTS - 12-18

1    *plaintiff's allegations unlikely... but to dismiss them as frivolous without any factual development* (see *ECF No. 10.*).

2    *is to disregard the age-old insight that many allegations might be "strange, but true; for truth is always strange,*

3    *Stranger than fiction."*])

4         Plaintiff was not required to detail his medical condition to survive screening under *28 U.S.C. § 1915(e)*.

5    Dismissal under *§ 1915(d)* [now *§ 1915(e)*] is reserved for baseless claims—not ones where the facts are

6    insufficiently detailed (see *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). By unilaterally declaring that Plaintiff is

7    not disabled, the judge made an improper factual finding based on assumption (see *Fed. Rule. Civil. Proc 8(a)*)

8    rather than the record (see *Fed. Rule. Civil. Proc 12(b)(6)*). This exceeds the court's authority under *Rule 12* and

9    violates the principle that pro se complaints must be liberally construed (see *Erickson v. Pardus, 551 U.S. 89*

10    *(2007)*). The Court's conduct reflects prejudgment (see *McGary v. City of Portland*, 386 F.3d 1259, P. [2] (9th Cir.

11    2004)), judicial overreach, and an unfair dismissal of ADA and *§ 504* claims without permitting discovery.

12    **FIFTH ACT: Violation of Procedural Due Process in Misfiling of Mandamus Petition**

13         Plaintiff appealed to the 9th Circuit after the district court erred in dismissing the case without prejudice

14    **when Plaintiff had explicitly declined to amend the complaint** (see *ECF No. 14.*), which docketed the appeal as

15    **Case No. 25-764.** Plaintiff filed a separate Petition for a Writ of Mandamus, which was docketed under "**Appeal**

16    **Case No. 25-764** (see *ECF No. 6.*)", seeking immediate relief regarding unlawful procedural actions taken by the

17    District Court (*ECF No. 10.*). *See Ex parte Fahey*, 332 U.S. 258, 259-260 (1947)); [("*These remedies should be*

18    *resorted to only where appeal is a clearly inadequate remedy.*)] Defendant's failure to properly docket Plaintiff's

19    mandamus petition as a separate case constitutes a violation of due process rights under the **15th** and **4th**

20    **Amendments.** Under *FRAP 21(a)(1),* a petition for a writ of mandamus must be docketed separately from any

21    appeal. Defendant's actions have denied Plaintiff access to a fair and timely review of his petition under *FRAP*

22    *21(b)(6)*. *See Bounds v. Smith*, 430 U.S. 817, 828 n. [17] (1977)). The Supreme Court has held that **access to courts**

23    **is a fundamental right,** and intentional **obstruction of judicial access violates due process** (*Christopher v.*

24    *Harbury,* 536 U.S. 403, 415 n. [12] (2002)).

25         By misfiling the mandamus petition within the appeal (*ECF No. 6.*), Defendant delayed its adjudication and

26    prevented it from being reviewed as an independent matter, violating the core purpose of mandamus relief (*In re*

27    *Cement Antitrust Litig.,* 688 F.2d 1297, 1301 & 1304 (9th Cir. 1982)); ([*"Exercise of our supervisory mandamus*

28

1    *authority is particularly appropriate when an important question of law would repeatedly evade review because of*

2    *the collateral nature of the issue."*]. (*See ECF. 10.*).

3       Similarly situated litigants have had their mandamus petitions docketed separately, but Plaintiff was treated

4    differently without a rational basis (see *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 369 (1981)); *Kerr v.*

5    *United States District Court*, 426 U.S. 394, 402 (1976)) ([*"The remedy of mandamus is a drastic one, to be invoked*

6    *only in extraordinary situations."*]). The Supreme Court has recognized "class-of-one" Equal Protection claims,

7    where government actors treat an individual differently from others in similar circumstances without a legitimate

8    governmental justification. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 563 (2000)); ([*"Our cases have*

9    *recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has*

10   *been intentionally treated differently from others similarly situated and that there is no rational basis for the*

11   *difference in treatment."*])

12      **Violation of Appellate Procedure and Denial of Appellate Review**: Plaintiff submitted his Opening Brief

13   one month ahead of the scheduled deadline pursuant to *FRAP 28(a)*. The procedural obligation shifted to the

14   respondent to file a responsive brief pursuant to *FRAP 31(a)(1)*, the appellee's answering brief became due 30 days

15   thereafter. *See FRAP Rule 27(b)* (["The court must act promptly on motions."]) Over a year has passed with no reply

16   from appellee (see *FRAP 31(c)*; ["If the Appellee **fails to file a Reply brief, default judgment is entered**."]) and no

17   order from the Court enforcing *FRAP 31(a)(1)*. *See 28 U.S.C. § 2106*, This gives appellate courts **authority to**

18   **correct lower court errors** and enforce fairness. *See Thomas v. Arn*, 474 U.S. 140, 147 (1985), ([*"failed to comply*

19   *with a scheduling order... standing alone, to invalidate the court's exercise of its supervisory power... the district*

20   *judge to focus attention on those issues -- factual and legal..."*]) see also *Lassiter v. Department of Social Services*,

21   452 U.S. 18, 27 (1981) (noting that courts must take special care in ensuring pro se litigants receive full and fair

22   hearings).

23      Once the appellant's Opening Brief is filed, the scheduling of the responsive brief is no longer contingent

24   on any prior calendaring but instead triggered by the service of the appellant's brief. *See Logan v. Zimmerman Brush*

25   *Co.*, 455 U.S. 422, 433 (1982) ("The Court traditionally has held that the Due Process Clauses protect civil litigants

26   who seek recourse to the courts...") The 9th Circuit's failure to issue a disposition or ruling on the merits—after full

27   briefing by the appellant and a complete absence of opposition—conflicts with the judiciary's duty to ensure that

28

    COMPLAINT FOR VIOLATIONS OF RACKETEERING (RICO) AND CIVIL RIGHTS - **14-18**

1   litigants receive a fair adjudication of claims properly before the court. *See Barker v. Wingo,* 407 U. S. 514, 530

2   (1972) ([*"a delay that prejudices a party's fundamental rights must be evaluated under a balancing test."*]) Here,

3   every factor — the extended delay, the absence of a response by the appellee, Plaintiff's repeated efforts to assert his

4   rights, and the resulting prejudice — weighs heavily in Plaintiff's favor. The Court's prolonged inaction and failure

5   to enforce *FRAP 31(a)(1)* has deprived Plaintiff of meaningful appellate review.

6   **SIXTH ACT: Improper Notice of Related Cases and Procedural Manipulation**

7            The Local Rules of the Southern District of California (*Civ. LR 40.1*) strictly limit the **reassignment of**

8   **cases to "pending"** civil actions within the southern district jurisdiction. Pursuant to *Rule 40.1(e)* and *(j)*; ([*"only*

9   *cases that are "pending" or "currently filed" may be assigned as related."*]) Court dismissed cases are no longer

10  "pending" and cannot serve as the basis for a low-number reassignment. Jurisdiction over a case shifts to the

11  appellate court once a Notice of Appeal is filed, precluding any further district court actions affecting the appealed

12  case. *See Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 n. [1] (1982) (*"The filing of a notice of*

13  *appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the*

14  *district court of its control over those aspects of the case involved in the appeal."*).

15           Despite these clear mandates, court officials improperly issued a Notice of Related Cases linking Plaintiff's

16  newly filed case to prior matters that were either **(1) *dismissed by the court*** or **(2) *already on appeal to the 9th***

17  ***Circuit Court of Appeals*, where jurisdiction had fully vested.** *See Mooney v. Holohan,* 294 U.S. 103, 112 (1935)

18  ([*"A litigant need not prove actual prejudice where the record shows intentional disregard of the statute."*])

19           *Ndizeye v. Caietti* was terminated by the court, making it no longer pending. Therefore, it cannot serve as

20  the basis for a related-case designation under *Civ. LR 40.1,* which applies only to pending or currently filed matters.

21           *Ndizeye v. City of San Diego* was active on appeal and still remains active before the 9th Circuit under

22  Docket No. 25-764. Once a notice of appeal is filed, the district court loses jurisdiction over any matter involved in

23  the appeal. *See Griggs,* 459 U.S. at 58.

24           *Ndizeye v. Dwyer* involved distinct parties and legal questions—specifically judicial and clerk

25  misconduct—unrelated to the ADA claims in *Ndizeye v. City of San Diego*.

26           Thus, none of these cases properly qualify as "related" under *Civ. LR 40.1(e)*.

27

28
────────────────────────────────────────────────
         COMPLAINT FOR VIOLATIONS OF RACKETEERING (RICO) AND CIVIL RIGHTS - 15-18

1    In Plaintiff's case, the judicial officers — functioned as **Judge, Jury, and Executioner**; As a **shielding**

2  **network** — leveraging internal relationships, prior professional affiliations, and manipulation of procedural

3  assignments to **deflect scrutiny away from misconduct committed by Judge Caietti**. In *United States v. Lanier*,

4  520 U.S. 259 (1997), convictions against a state judge who sexually assaulted litigants, finding **the rights involved**

5  **were "clearly established." under** *18 U.S.C. § 242*. [(*"The touchstone is whether the statute, either standing alone*

6  *or as construed by the courts, made it reasonably clear at the time of the charged conduct that the conduct was*

7  *criminal. See Lanier*, 520 U.S. at 259 "])*, Their authority extended from **selecting themselves as adjudicators**, to

8  **deciding issues involving their own professional associates**, to **terminating the litigation** without a single finding

9  on the merits.

10    Their coordinated handling of the case reflects a **self-insulating enterprise** (*See Sever v. Alaska Pulp*

11  *Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992)); ([*"... a single episode with a single purpose which happened to involve*

12  *more than one act taken to achieve that purpose."*]), impervious to the challenge of an unconnected American

13  litigant. Once assigned, they ensured the case was cornered — not heard — and ultimately buried without

14  accountability. *See Russello v. United States,* 464 U.S. 16, 17 (1983)). Such repeated acts, taken together, evidence a

15  pattern that advances the interests of the defendants while denying litigants a fair opportunity to prosecute their

16  claims. Under *18 U.S.C. § 1961(5)*, two or more such unlawful acts can establish the requisite "pattern of

17  racketeering activity." Their unchecked discretion became a **closed system** that functioned to shield one another (see

18  *Ikuno v. Yip,* 912 F.2d 306 (9th Cir. 1990)); ([Control under *§ 1962(b)* does not require 'formal control'; rather, it is

19  sufficient if the defendant has 'knowingly participated in the scheme.]) from exposure and consequences, operating

20  **above the reach of law** and **outside the rights of the citizen.**

21    **Deprivation of Rights Under Color of Law:** The reassignment effectively misrepresented the procedural

22  posture of the new filing by implying that the claims had already been restated and adjudicated—when, in fact, they

23  had not. *See United States v. Radlick,* 581 F.2d 225, 230 (9th Cir. 1978), ([*"The intentional disregard of the*

24  *district's assignment plan requires reversal of the conviction regardless of prejudice."*]). This act laid the

25  groundwork for redirecting Plaintiff's new action back to the same judges who previously issued erroneous rulings.

26  *See United States v. Christensen,* 828 F.3d 763, 799–800 (9th Cir. 2015), ([*"In a RICO case involving public*

27

28

COMPLAINT FOR VIOLATIONS OF RACKETEERING (RICO) AND CIVIL RIGHTS - 16-18

1  *corruption, 9th Circuit upheld convictions where public officials used legal process to protect illicit relationships*

2  *and shield unlawful activity."])*

3        This deliberate reassignment contradicted *Civ. LR 40.1(e)*, which prohibits treating a court dismissed case

4  as 'pending' or eligible for reassignment. *See Fed. R. Civ. P. 60(b)(4)*. The court effectively compelled Plaintiff to

5  participate in a case that was no longer active (see *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991)), ([*"Courts*

6  *may not use its inherent authority to force a pro se litigant into continued proceedings under a case it has already*

7  *dismissed."])* and over which the court lacked jurisdiction. *See United States v. Berke,* 170 F.3d 882, 883 (9th Cir.

8  1999) ([*"A judgment is void if the court that rendered it lacked subject matter jurisdiction."])*.

9        The U.S. Supreme Court has recognized that RICO can be based on judicial corruption and abuse of

10  official channels. *See United States v. Maloney,* 71 F.3d 645 (7th Cir. 1995) (affirming RICO conviction of judge

11  who manipulated court procedures to protect favored parties). A "scheme or artifice" among court officers to

12  improperly merge unrelated cases and channel them to preselected judges forms a cognizable RICO enterprise. (*See*

13  *United States v. Turkette,* 452 U.S. 576, 583 (1981)); ([*"The enterprise is an entity, for present purposes a group of*

14  *persons associated together for a common purpose of engaging in a course of conduct."])*

15        In this instance, the manipulation of procedural designations and reassignments operated not as an innocent

16  error, but as a calculated step to preserve a closed loop of biased adjudication and avoid external review—hallmarks

17  of a coordinated enterprise under RICO.

18                **V.**    **CONCLUSION**

19      **WHEREFORE, Plaintiff respectfully requests that this Court:**

20  a)  Immediate remediation of the subject roadway to bring it into compliance with the requirements of the

21        Title II of the ADA, *42 U.S.C. § 1983,* and *§ 504* of the Rehabilitation Act;

22  b)  Declaration that Plaintiff, as a pro se litigant, was entitled to procedural fairness, which the District Court

23        and Appellate Court failed to provide;

24  c)  Acknowledge that laws referenced in the RJN do not require additional evidence and the District Court was

25        obligated to rule on them regardless;

26  d)  A declaration that Defendants violated Plaintiff's due process rights by failing to properly docket his

27        mandamus petition as a separate case, as required by *FRAP 21(a)(1)*;

28

      COMPLAINT FOR VIOLATIONS OF RACKETEERING (RICO) AND CIVIL RIGHTS - 17-18

1     e)  Plaintiff asks the District Court to refer the judges, clerk, and city officials to the department of justice

2         (DOJ) and FBI to issue an investigation for RICO violations (*18 U.S.C. § 1962(c)*). (*See Dennis v. Sparks*,

3         449 U.S. 24 (1980));

4     f)  Plaintiff respectfully demands judgment against the Defendants, jointly and severally, as follows:

5         a.  **Compensatory damages** in the amount of **$8,753,419.23** for physical injury, emotional distress,

6            constitutional violations, and civil rights deprivations;

7         b.  **Treble damages** under 18 U.S.C. § 1964(c) (RICO) totaling **$26,260,257.69**;

8         c.  **Punitive damages** in the amount of **$51,014,806.58**, for willful, malicious, and discriminatory

9            misconduct committed under color of law;

10        d.  **Systemic restitutionary** relief amounting to **$321,641,988,423.17** against the City of San Diego,

11           representing the compounded economic harm to the public due to 58 years of unlawful

12           infrastructure neglect and regulatory noncompliance, pursuant to ADA Title II, Title VI of the

13           Civil Rights Act, and *Exec. Order No. 12898, § 1-101.*

14     Grant any further relief that the Court deems just and proper.

15     **Demand for Jury Trial:**

16     Plaintiff demands a trial by jury on all issues so triable.

17     "I, Daniel Ndizeye, Plaintiff in the above-captioned case, declare under penalty of perjury under the laws of

18   the United States, pursuant to *18 U.S.C. § 1621*, that the foregoing is true and correct. "

19

20

21

22   **Dated:** February 11, 2025.
       Name: Daniel Ndizeye

23   **Address:** 711 51st St, San Diego, CA 92114-1001, USA     **By:** _____

24   **Phone Number:** (619) 394-2453           **Pro Se, Plaintiff:** Daniel Ndizeye
       **Email:** danielndizeye100@gmail.com

25

26     **Daniel Ndizeye v. City of San Diego, Vlad Grem, (Does 1-10, Inclusive), (In Their Official Capacity), Judge
      Carolyn Caietti, Vlad Grem, (In Their Official Capacity), Gavin Christopher Newsom, Molly C. Dwyer, (In Her

27       Official Capacity), and Judges, Clerks, & Individuals Does 1-20 (In Their Official Capacity),**

28

      COMPLAINT FOR VIOLATIONS OF RACKETEERING (RICO) AND CIVIL RIGHTS - 18-18

JS 44 (Rev. 03/24)  **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Daniel Ndizeye

**DEFENDANTS**

City of San Diego, Judge Carolyn Caietti, et al. See Complaint

**(b)** County of Residence of First Listed Plaintiff    San Diego
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Multiple
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | ☐ 840 Trademark | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | **PRISONER PETITIONS** | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | *Habeas Corpus:* | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 463 Alien Detainee | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 510 Motions to Vacate Sentence | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 530 General | | |
| | ☐ 448 Education | ☐ 535 Death Penalty | | |
| | | *Other:* | **IMMIGRATION** | |
| | | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. § 1961 et seq.; 42 U.S.C. § 1983; 18 U.S.C. § 1503

Brief description of cause:
RICO and § 1983 claims for obstruction and deprivation of rights under color of law.

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $  See Complaint

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**  *(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE  02/11/2025

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____



US POSTAGE AND FEES PAID
GROUND ADVANTAGE IMI
Jul 31 2025
Mailed from ZIP 92115
4 OZ GROUND ADVANTAGE RATE
ZONE 5
11255152
Commercial

**G**

endicia

## USPS GROUND ADVANTAGE

DANIEL NDIZEYE                    C002    0001
711 51ST ST
SAN DIEGO CA 92114

Shipped using PostalMate
Pkg:228793



SHIP    J. MARVIN JONES FEDERAL BUILDING
TO:     U.S. DIST. COURT NORTHERN DIST. OF TEXAS
        205 SE 5TH AVENUE ROOM 133
        AMARILLO TX 79101



RECEIVED

AUG - 6 2025

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

### USPS TRACKING #



9400 1508 9956 2044 5995 08





SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.